PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BRUCE A. MABRY,

      Defendant-Appellant.

No. 12-3036

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:11-CR-10102-EFM-01)**

---

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, Kansas, for
Defendant-Appellant.

Brent I. Anderson, Assistant United States Attorney (Barry R. Grissom, United States
Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

---

Before **TYMKOVICH, EBEL,** and **HOLMES,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

**INTRODUCTION**

      Bruce A. Mabry was arrested for a parole violation. While arresting Mr. Mabry,

the officers found a sawed-off shotgun and subsequently charged Mr. Mabry with its

possession. He moved to suppress the evidence of the weapon on the basis that his Fourth Amendment rights were violated by the search. The district court denied his motion to suppress, and Mr. Mabry appeals.

We conclude that the officers had a reasonable suspicion that Mr. Mabry had violated his parole. In light of Mr. Mabry's diminished expectation of privacy and the State's strong interest in monitoring Mr. Mabry's behavior and preventing his recidivism, this court affirms the district court's denial of Mr. Mabry's motion to suppress on the basis that it was a valid search under the totality of the circumstances. [1]

## BACKGROUND

Prior to the incident involved in this appeal, Mr. Mabry was released from state prison, placed on parole, and assigned to be supervised by Kansas Parole Officer Garcia. At that time, Mr. Mabry signed a form entitled, "Conditions of Release for Parole and Post Release Supervision." This form listed the standard conditions of parole. These conditions included that Mr. Mabry obtain permission to travel outside of Kansas; that he notify his parole officer of any contact with law enforcement; that he not possess, use, or traffic in any controlled substances or drugs; and that he not associate with anyone

---

[1] Because we conclude that the contested evidence was obtained through a valid search of a parolee under the totality of the circumstances, we need not resolve whether the search was a valid protective sweep. Elwell v. Byers, 699 F.3d 1208, 1213 (10th Cir. 2012) ("We can affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court.").

actively engaged in illegal activity. Moreover, Mr. Mabry agreed to "[b]e subjected to a search by parole officers or designated law enforcement officers of [his] person, residence, and any other property under [his] control." R.O.A., Vol. I at 30.

Several months after Mr. Mabry's release, he violated his parole by leaving the state of Kansas. He was discovered by police in Utah in a car, driven by another parolee, which contained twenty-two pounds of marijuana. The other parolee was arrested, but Mr. Mabry was not arrested at that time. While Parole Officer Garcia was away on vacation, his partner, Parole Officer Marquez, learned about the incident in Utah and issued an "Order to Arrest and Detain" on the basis that Mr. Mabry had violated his parole by traveling out of state. The "Order to Arrest and Detain" was given to Special Enforcement Officer ("SEO") Evans, a special agent employed by the Kansas Parole Office who was also assigned to the U.S. Marshals Task Force.

The next day, SEO Evans contacted two officers of the Wichita Police Department, Officer Tiede and Officer Norton, and went with them to Mr. Mabry's last reported address, which was the address of his girlfriend. When they arrived, SEO Evans and Officer Tiede went to the front door of the residence, while Officer Norton went around back. When SEO Evans knocked, a woman who was later identified as Mr. Mabry's girlfriend answered the door.

The district court found that "[Mr.] Mabry's girlfriend appeared nervous and tried to shut the door to the residence when SEO Evans and Officer Tiede came to the front door." R.O.A., Vol. 1 at 54. SEO Evans informed the girlfriend who he was and that he

3

needed to speak to Mr. Mabry. The girlfriend indicated that Mr. Mabry was unavailable, claiming that he was somewhere like the shower or bathroom. But at that point, Mr. Mabry walked into view from the back kitchen area. Accordingly, SEO Evans and Officer Tiede entered the residence.

SEO Evans arrested Mr. Mabry, had Mr. Mabry sit on the couch in the living room, and asked the girlfriend to stay in the living room as well. According to the testimony of SEO Evans, at the time he placed Mr. Mabry under arrest, he saw a tray underneath the coffee table that appeared to contain marijuana.

SEO Evans and Officer Tiede proceeded to search the residence. SEO Evans searched the bedroom nearest the living room, while Officer Tiede went to search the basement. Officer Tiede testified that before she went downstairs, the girlfriend "was real nervous" and advised Officer Tiede that the basement was her children's room. R.O.A. Vol. III at 80. Moreover, Officer Tiede testified that she asked the girlfriend if there was anybody in the basement, but the girlfriend did not answer the question and instead just repeated that it was her children's room. In the basement, Officer Tiede found an open closet containing a firearm in plain view. Because her radio did not transmit from the basement, Officer Tiede brought the firearm upstairs.

Mr. Mabry was subsequently charged with the unlawful possession of this weapon. He moved to suppress the evidence on the grounds that the search had violated his rights under the Fourth Amendment. The district court denied the motion. Mr. Mabry

4

then pled guilty, was sentenced, and appealed, arguing that the district court erred in denying his motion to suppress.

## JURISDICTION

Mr. Mabry timely filed this appeal under Fed. R. App. P. 4(b). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Eckhart, 569 F.3d 1263, 1270 (10th Cir. 2009) (internal quotation marks omitted). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." United States v. Rosborough, 366 F.3d 1145, 1148 (10th Cir. 2004) (internal quotation marks omitted). But "[w]e can affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court." Elwell, 699 F.3d at 1213.

## DISCUSSION

"A [parolee's] home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be reasonable." United States v. Warren, 566 F.3d 1211, 1215 (10th Cir. 2009) (alteration in original) (internal quotation marks omitted). But there are "exceptions to the warrant and probable-cause requirements" for "searches of

probationers and parolees and their homes." Id. One such exception "authorizes

warrantless searches without probable cause (or even reasonable suspicion) . . . [2] when

the totality of the circumstances renders the search reasonable." [3] Id. at 1216. We have

explained that "[t]his exception is predicated on (1) the reduced (or absent) expectation of

privacy that the Court would recognize for probationers and parolees and (2) the needs of

law enforcement." Id.

Applying this exception, the Supreme Court held in Sampson v. California that

"the Fourth Amendment does not prohibit a police officer from conducting a

suspicionless search of a parolee" when such a search is authorized by state law. See 547

U.S. 843, 857 (2006). But in Sampson, "[t]he Court noted 'that some States and the

Federal Government require a level of individualized suspicion,' and strongly implied

that in such jurisdictions a suspicionless search would remain impermissible." United

States v. Freeman, 479 F.3d 743, 747 (10th Cir. 2007) (quoting Sampson, 547 U.S. at

2201). Thus, "[p]arolee searches are . . . an example of the rare instance in which the

---

[2] Specifically, the totality-of-the-circumstances exception "authorizes warrantless searches without probable cause (or even reasonable suspicion) by police officers with no responsibility for parolees or probationers when the totality of the circumstances renders the search reasonable." Warren, 566 F.3d at 1216.

[3] The other exception allows "for a parole officer to search parolees in compliance with a parole agreement search provision, but without a warrant," because "[s]upervision [of parolees] . . . is a special need of the State." United States v. Freeman, 479 F.3d 743, 746 (10th Cir. 2007) (alterations in original) (internal quotation marks omitted). Because we uphold the search under the totality of the circumstances, we do not consider the special needs exception.

contours of a federal constitutional right are determined, in part, by the content of state law." Id. at 747–48.

Under Kansas law, a warrantless search of a parolee must be supported by reasonable suspicion. See id. at 748; accord State v. Bennett, 200 P.3d 455, 462–63 (Kan. 2009) ("The Kansas Legislature has not authorized suspicionless searches of probationers or parolees. . . . Put another way, parolees in Kansas have an expectation that they will not be subjected to suspicionless searches."). Indeed, in Kansas, "parolees are told that searches must be based on a suspicion of a parole violation." Bennett, 200 P.3d at 462.

"Reasonable suspicion is a less demanding standard than probable cause." United States v. Tucker, 305 F.3d 1193, 1200 (10th Cir. 2002) (internal quotation marks omitted). Specifically, "reasonable suspicion is merely a particularized and objective basis for suspecting criminal activity." Id. "To determine whether . . . investigating officers had reasonable suspicion, we consider both the quantity of information possessed by law enforcement and its reliability," viewing both factors "under the totality of the circumstances." Id. (footnote omitted).

Under the totality of the circumstances, we conclude that the search at issue here was reasonable, because (1) as a parolee, Mr. Mabry had a diminished expectation of privacy; (2) there was reliable information that Mr. Mabry had violated his parole and was involved with distributing drugs, which supports a reasonable suspicion to search the

7

residence; and (3) the State had a strong interest in monitoring Mr. Mabry's behavior and preventing his recidivism, especially in light of his recent parole violations.

First, "[a] parole agreement containing a provision allowing the search of a parolee's residence diminishes the parolee's reasonable expectation of privacy in his residence." Id. at 1199; accord Samson, 547 U.S. at 852 ("[A]cceptance of a clear and unambiguous search condition significantly diminishe[s] [a defendant's] reasonable expectation of privacy." (internal quotation marks omitted)). In this case, in his last meeting with Parole Officer Garcia, Mr. Mabry listed as his residence the address of his girlfriend, and Parole Officer Garcia approved the change in address. And when Mr. Mabry was placed on parole, he signed a form entitled "Conditions of Release for Parole and Post Release Supervision," which stated that he agreed to "[b]e subjected to a search by parole officers or designated law enforcement officers of my person, residence, and any other property under my control." R.O.A., Vol. I at 30. Thus, Mr. Mabry was clearly aware of this condition of his parole, which "significantly diminished" his expectation of privacy.

Second, both the information that Mr. Mabry had violated his parole and was involved in transporting illegal drugs, as well as the circumstances at the residence, supported the officers' reasonable suspicion that Mr. Mabry had violated his parole. Although we have rejected the notion that a defendant's "parolee status and criminal history, without other particularized and objective facts, [is] sufficient to form reasonable suspicion," Freeman, 479 F.3d at 749, there were "particularized and objective facts" in

8

this case, beyond Mr. Mabry's general criminal history and parolee status, which support a reasonable suspicion that Mr. Mabry had violated his parole.[4] Parole Officer Marquez testified that he supervised the parolee who had been driving the car in Utah that contained twenty-two pounds of marijuana; he contacted the Utah state trooper who had arrested the other parolee; and he learned from the state trooper that Mr. Mabry had also been in the vehicle. Based on this information, he prepared the Order to Arrest and Detain. SEO Evans's report states:

> I received information from P[arole] O[fficer] . . . Marquez that [Mr. Mabry] needed to be arrested on an arrest and detain warrant. Apparently this offender and [another parolee] [were] stopped in Utah with a large amount of marijuana a few weeks prior but this offender was not arrested . . . . I met with [Wichita Police Department] officers Norton/Tiede and informed them of the situation.

R.O.A., Vol. 1 at 32. Accordingly, the officers had reliable information that Mr. Mabry had violated his parole and been involved in transporting illegal drugs.[5]

---

[4] We note that this case is easily distinguishable from United States v. Freeman, 479 F.3d 743 (10th Cir. 2007). In Freeman, the defendant was visited by police officers in the middle of the night as part of a random curfew check, and the district court found that the officers had no reasonable suspicion when they entered the defendant's home, but that circumstances developed to give rise to a reasonable suspicion. Id. at 745, 749. In contrast to Freeman, in this case, the officers already had reliable information to support a reasonable suspicion when they arrived to arrest Mr. Mabry.

[5] Mr. Mabry contends that his parole violations in Utah, which occurred two and a half weeks prior to the search, were too remote in time to support a reasonable suspicion for the search. We reject this argument. A "reasonable suspicion is merely a particularized and objective basis for suspecting criminal activity." Tucker, 305 F.3d at 1200. Parole Officer Marquez provided reliable information that Mr. Mabry had recently committed

Continued . . .

In addition, the circumstances at the house contributed to the officers' reasonable suspicion that Mr. Mabry had violated his parole and engaged in illegal activity. Specifically, the district court determined that "[c]ontemporaneous with the arrest, SEO Evans observed marijuana in plain view on the floor under the table."[6] R.O.A., Vol. 1 at 54. Moreover, Mr. Mabry's girlfriend behaved nervously and evasively throughout the encounter—she attempted to close the door while initially talking to the officers; she indicated that Mr. Mabry was unavailable by claiming he was somewhere like the shower or bathroom, but at that point he appeared from the back kitchen area; and she would not answer whether anyone was in the basement.[7] In light of these circumstances and the

_____

Cont.

several parole violations. That information is proximate in time and bears on whether the officers had a reasonable suspicion for searching the home.

[6] Mr. Mabry argues that the marijuana was not observed by SEO Evans until after the officers searched the house. While it is true that there is conflicting evidence on this point, we view the evidence in the light most favorable to the Government and give deference to the factual findings of the district court.

SEO Evans testified that he found the tray of marijuana when he cuffed Mr. Mabry before the search. There was conflicting evidence, but on this record, we consider the evidence most favorable to the Government. Eckhart, 569 F.3d at 1270. Even without the tray of marijuana, we conclude that under the totality of the circumstances the officers had a reasonable suspicion of a parole violation.

[7] As Mr. Mabry notes, "[r]efusal to consent to a search—even agitated refusal—is not grounds for reasonable suspicion." Freeman, 479 F.3d at 749. But "nervousness, even if it may be a normal reaction [to law enforcement], is still among the pertinent factors a reasonable law enforcement officer would analyze in investigating possible crimes, and should not be completely disregarded." United States v. Johnson, 364 F.3d 1185, 1192 (10th Cir. 2004) (holding that a district court erred in not considering a defendant's

Continued . . .

information that the officers possessed about the incident in Utah, we hold that the officers had a reasonable suspicion that Mr. Mabry had violated the terms of his parole.

Finally, "a State has an overwhelming interest in supervising parolees because [they] are more likely to commit future criminal offenses." Samson, 547 U.S. at 853 (internal quotation marks omitted); accord Tucker, 305 F.3d at 1199. Here, in light of information regarding Mr. Mabry's recent parole violations and the circumstances at the residence, the State had an especially strong interest in monitoring Mr. Mabry's behavior and preventing his recidivism.

On the other hand, Mr. Mabry contends that the search was not lawful because it did not comply with Kansas Department of Corrections Internal Management Policy and Procedure Section 14-164 III(a)(1), which requires an SEO executing an arrest warrant to get prior approval from a supervisor to search the residence. Under the totality of the circumstances, the failure to comply with state policies governing searches of parolees is a factor to consider. See Freeman, 479 F.3d at 748. But in Tucker, we rejected a defendant's argument that the search of his home was necessarily invalid because it did not comply with state law governing parole searches. See 305 F.3d at 1200. We stated that while "a parole search may be upheld if it is conducted pursuant to a state

---

Cont.

nervousness as part of the totality of the circumstances when evaluating the validity of a Terry stop).

11

parole/probation system that itself complies with the Fourth Amendment[,] . . . [t]hat . . . is not the exclusive avenue by which the search may be deemed reasonable under the Fourth Amendment." Id. Instead, "a parole search is also valid if reasonable under [the] general Fourth Amendment principles" that apply to searching parolees. Id. In other words, in Tucker, we stressed that even assuming a search did not comply with the state law, because it was a search of a parolee, "it [would be] permissible under general Fourth Amendment principles if the officers had reasonable suspicion that contraband was located at [the defendant's] residence or that a crime had taken place." Id.

In this case, when considered in light of the totality of the circumstances, the alleged failure to get prior permission from a supervisor had a minimal impact on Mr. Mabry's expectation of privacy and the State's interest in supervising him. In light of the information regarding Mr. Mabry's recent parole violations and the conditions at the residence, the officers possessed a reasonable suspicion that Mr. Mabry had violated his parole, and his limited expectation of privacy was outweighed by the State's strong interest in monitoring his behavior and preventing his recidivism.

## CONCLUSION

We hold that Mr. Mabry had a diminished expectation of privacy, which was outweighed by the State's strong interest in monitoring him and preventing his recidivism, and that the officers had a reasonable suspicion that Mr. Mabry had violated his parole. Accordingly, the search was valid under the totality of the circumstances and

12

we AFFIRM the district court's denial of Mr. Mabry's motion to suppress.  We also

GRANT Mr. Mabry's unopposed motion to seal.