Buser, J.:
Following a bench trial on stipulated facts, the district court convicted Tony Toliver, a parolee under the supervision of the Kansas Department of Corrections (KDOC), of marijuana possession and sentenced him to 6 months’ probation with an underlying 60-day jail term.
On appeal, Toliver asks us to reverse his conviction. He contends the district court erroneously denied his motion to suppress the marijuana which was found in a search of his residence. Toli-ver asserts his rights under foe Fourth Amendment to the United States Constitution were violated when KDOC parole officers and law enforcement officers searched his apartment without a warrant and without reasonable suspicion of a parole violation or criminal activity.
Upon our review, we hold that Toliver’s Fourth Amendment *346 rights were violated. The plain language of K.S.A. 2014 Supp. 22-3717(lc) requires only that parolees agree to be subject to search or seizure. The “Conditions of Release for Post-Incarceration Supervision” (Parole Agreement) signed by Toliver, however, mandated not only a search of the parolee but also his residence and property. These additional requirements were not statutorily authorized and were at variance with the legislature’s formulation of what constitutes a reasonable expectation of privacy for Kansas parolees.
In order to comply with Fourth Amendment jurisprudence relating to the reasonableness of parolee searches and seizures, the legislature s formulation of a parolee’s diminished privacy interests influences the contours of the Fourth Amendment. Because the Parole Agreement provided that Toliver was not only subject to suspicionless searches and seizures, as provided by Kansas law, but also to searches of his residence and property, we conclude the search of Toliver’s apartment was beyond tíre authorization of K.S.A. 2014 Supp. 22-3717(k) and, therefore, violated the Fourth Amendment.
Accordingly, we reverse Toliver’s conviction and remand the case to the district court to grant the motion to suppress evidence and for further proceedings.
Factual and Procedural Background
The search and seizure issue presented by this appeal has evolved since it was first considered by the district court in a pretrial motion to suppress evidence. For this reason, it is necessary to take a brief trip on the long and winding procedural road that brings us to resolve this particular legal issue on appeal.
After Toliver was charged with possession of marijuana, he filed a motion to suppress tire contraband in district court. The motion asserted that on October 17, 2013, two KDOC parole officers and three Riley County detectives illegally searched Toliver’s apartment. While acknowledging that in order to obtain release on parole Toliver had agreed to subject himself and his residence to warrantless searches, the motion claimed the search was only permissible under the Fourth Amendment if it was made with reason *347 able suspicion th at Toliver had violated a law or a condition of his parole. Toliver alleged the KDOC parole officers and detectives had no such reasonable suspicion to enter his residence and conduct a search.
At the suppression hearing, on December 16, 2013, KDOC Parole Officer Tabitha Neubert was the only witness to testify. Neu-bert testified that she began supervising Tolivers parole on March 26, 2013. The next day, Toliver executed the Parole Agreement. This form set forth 12 requirements that Toliver agreed to comply with during his parole. These conditions, among other tilings, obligated Toliver to obey all laws, not possess weapons, not possess or take illegal drugs or alcohol, maintain employment, comply with all treatment programs, and follow the written guidelines pertaining to reporting, travel, and maintaining a residence.
Of particular relevance to this appeal, Toliver also agreed to condition 12 of the Parole Agreement which provided:
“I agree to:
[[Image here]]
“12. Search:
“• Be subjected to a search of my person, residence, and any other property under my control by parole officers, any authorized parole staff, and department of corrections enforcement, apprehension and investigation officers with or without a search warrant and with or without cause.
“• Be subjected to a search of my person, residence, and any other property under my control by any law enforcement officer based on reasonable suspicion of violation of conditions of post-incarceration supervision, or reasonable suspicion of criminal activity.” (Emphasis added.)
According to Neubert, on October 17, 2013, she was accompanied by KDOC Parole Officer David Quintanar along with Detectives Daniel Bortnick, Jayson Hubbard, and Brian Johnson when she performed this first “home visit” to Tolivers apartment. The purpose of the visit was to verify that Toliver was actually residing at the address. According to Neubert, neither she nor the detectives had any reason to suspect Toliver was involved in criminal activity or had committed any parole violations.
Neubert explained that while Toliver had never been violent towards her or Quintanar, she was aware of a prior police report *348 indicating that Toliver had been violent towards a law enforcement officer. As a result, she requested law enforcement assistance for safety reasons. At Toliver’s apartment, however, Neubert also directed the detectives to assist her in the search of the residence.
When tire KDOC parole officers and Riley County detectives arrived at the apartment, Toliver let them into the apartment building. Neubert advised Toliver that she “just need[ed] to see around.” Toliver went back upstairs to his bedroom. Upon entering the apartment, Neubert noted that several relatives of Toliver were present. The KDOC parole officers and detectives then conducted “a walk-through” of the apartment. Neubert explained, “I wouldn’t call it [a] search [at that point]. We always look around wherever we go in.”
Neubert testified to three reasons she believed she had authority, pursuant to the Parole Agreement, to instruct the detectives to search Toliver’s apartment. First, Quintanar told her that while “looking around” someone found alcohol in Toliver’s kitchen; and under the Parole Agreement, Toliver is prohibited from drinking alcoholic beverages. Neubert acknowledged that she did not ask Toliver’s relatives if they had brought the alcohol with them because Toliver, the only person living in the apartment, was “responsible for his residence.”
Second, Neubert had been advised by a Riley County detective to “be observant” during the home visit because there might be stolen property in the apartment. During the search of the apartment, Detective Bortnick observed a laptop computer. He asked Toliver who owned the laptop, and Toliver responded that “it belonged to his sister’s boyfriend [or] husband.” According to Néubert, however, Detective Bortnick seized the laptop because he suspected it was stolen.
Third, Neubert believed Toliver “was acting suspicious, like hovering around the corner of his bed.” According to Neubert, Toliver “[j]ust seemed really nervous”; “he was just pacing back and forth and just acting fidgety and staying right there.” As a result, Neu-bert directed Detective Johnson to search the bed, whereupon the detective found a small baggie of marijuana underneath the left corner of the bed. This was die same location where Toliver had been “hovering” prior to the search.
*349 At the conclusion of the evidence and arguments, the district court took the motion to suppress under advisement. Shortly thereafter, on December 20,2013, the district court ruled from the bench, denying the motion and making detailed factual and legal findings.
At the outset, the district court found the KDOC parole officers and detectives did not have any particularized reasonable suspicion that Toliver had engaged in criminal wrongdoing at the time they entered the apartment or immediately prior to discovery of the marijuana. Moreover, the district court found that prior to discovery of tire marijuana it was questionable whether any parole violation had been shown.
The district court cited State v. Bennett, 288 Kan. 86, 200 P.3d 455 (2009), for the proposition that “the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee . . . authorized by State law, as long as such searches are not arbitrary or done for harassment purposes.” (Emphasis added.) The district judge stated he had been unable to locate any Kansas law that authorized such searches; however, he determined “the law in Kansas is based [on]” KDOC’s Internal Management Policies and Procedures (IMPP). The district court assumed that the IMPP authorized such a search based on the language in To-livers Parole Agreement. And, in the district courts estimation, in the absence of action by the Kansas Legislature, the IMPP controlled the legality of the search and seizure. The district court also found that, in keeping with condition 12 of the Parole Agreement, the search was not arbitrary or capricious.
In denying Tolivers motion to suppress, the district court ruled that while the evidence demonstrated that neither the KDOC parole officers nor the detectives had reasonable suspicion of any parole violation or crime, the search of the apartment was constitutional because Toliver signed the Parole Agreement which mandated that he was subject to suspicionless searches by the KDOC parole officers. The district court also concluded that the detectives were operating at the direction of Neubert.
The parties agreed to submit the case to the district court for a *350 bench trial based on stipulated facts. The district courts denial of Toliver’s motion to suppress evidence, however, was reserved for appeal. Toliver was convicted of possession of marijuana, in violation of K.S.A. 2014 Supp. 21-5706(b)(3), based upon the following stipulated facts:
“• On October 17, 2013, Tabitha Neubert, KDOC parole officer assigned to [Toliver], conducted a home visit at [Toliverfs residence . . . , which is in Manhattan, Riley County, Kansas.
“• Accompanying Tabitha Neubert were David Quintanar, KDOC parole officer, Detectives Brian Johnson, Daniel Bortnick, and Jayson Hubbard.
“• At the residence, Tabitha Neubert made contact with . . . Toliver, who answered tire door to his apartment complex and then returned upstairs to his apartment. [Toliver] appeared to have just woken up. There were other individuals in the residence besides [Toliver] and those who accompanied Tabitha Neubert; however, [Toliver] had indicated to Tabitha Neubert that he was the sole resident of the apartment.
“• Upon looking around the residence, an empty bottle for alcohol was found in the trash can in the kitchen in plain view. The parole officers determined this was in violation of [Toliver] s parole conditions. In addition, Tabitha Neubert observed [Toliver] acting suspicious, hovering and acting fidgéty around his beds.
“• Based on [Toliver]⅞ parole conditions the officers believed they had reasonable suspicion to search [Toliverfs residence. Detective Johnson lifted tire mattress of [Toliverjs bed, where he had been located, and found a cellophane wrapper that appeared to contain marijuana. Detective Hubbard later tested this item and it field tested positive for THC.
“• At the residence [Toliver] made a statement nearly identical to ‘That’s my weed.’ A parole officer asked when [Toliver] last ingested marijuana and he stated recently.
“• After being arrested and transpprted to the Riley County Police Department and after being advised of Miranda [Toliver] told Detective Hubbard that a woman brought the marijuana over to his house and left it. [Toliver] stated he found it when he woke up, so he put it under his mattress to keep someone from stealing it or one of the children from taking it. [Toliver] stated he intended to call the woman and return it to her; however, he would not give Det. Hubbard her name.”
On May 5, 2014, Toliver was sentenced to 6 months’ probation with an underlying jail term of 60 days. Toliver then filed this timely appeal. Of note, dúring the pendency of this appeal Toliver successfully completed his misdemeanor probation.
Subsequent to the filing of the appellant’s and appellee’s briefs, our court issued an order that read, in relevant part:
*351 “Based on the record on file in the office of the Clerk of the Appellate Courts, it appears K.S.A. 2012 Supp. 22-3717(k) may be applicable to the search at issue in this case. Accordingly, because neither party cited or referenced this statute in tire briefs on appeal, the parties are directed to file supplemental briefing.... The submission should address the following question:
‘“Does K.S.A. 2012 Supp. 22-3717(k) apply to this case? If so, what is the effect, if any, of this statute upon the issue on appeal—whether the search of Toli-vers residence violated the 4th Amendment to the United States Constitution?’ ”
Both parties filed supplemental briefs prior to oral arguments.
The Right of KDOC Parole Officers to Subject Parolees to Suspicionless Searches and Seizures under the Fourth Amendment
When, as in this case, the material facts to a district courts decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court exercises unlimited review. State v. Stevenson, 299 Kan. 53, 57, 321 P.3d 754 (2014).
Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights. State v. Thompson, 284 Kan. 763, 772, 166 P.3d 1015 (2007). The exclusionaiy rule, a judicially created remedy, operates to protect Fourth Amendment rights through deterrence by preventing the use of unconstitutionally obtained evidence against the subject of the illegal search/seizure. State v. Daniel, 291 Kan. 490, 496, 242 P.3d 1186 (2010), cert. denied 131 S. Ct. 2114 (2011).
Of particular relevance to this appeal, parolees and probationers “ ‘have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities “reasonable” which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands.’” 5 LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 10.10(c), p. 533 (5th ed. 2012).
Preliminarily, the parties’ arguments in the district court, the *352 district courts ruling, and the parties’ initial briefs on appeal were all premised upon a misunderstanding of Kansas law—that the Kansas Legislature had not authorized suspicionless searches of parolees. On tire contrary, at the time Toliver executed the Parole Agreement, K.S.A. 2014 Supp. 22-3717(k)(2) specifically authorized KDOC parole officers to conduct suspicionless searches of parolees without a search warrant and without cause. K.S.A. 2014 Supp. 22-3717(k)(2) and (3) provide:
“(2) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by a parole officer or a department of corrections enforcement, apprehension and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitraiy or capricious searches or searches for the sole purpose of harassment.
“(3) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by any law enforcement officer based on reasonable suspicion of die person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity. Any law enforcement officer who conducts such a search shall submit a written report to the appropriate parole officer no later dran the close of the next business day after such search. The written report shall include the facts leading to such search, the scope of such search and any findings resulting from such search.” (Emphasis added.)
Our court acknowledged this statute in State v. Chapman, 51 Kan. App. 2d 401, 409, 347 P.3d 700 (2015). We understood that, as amended in 2012, this statute mandated that parolees agree, in writing, to be subject to warrantless search or seizure by a KDOC parole officer at any time, with or without cause, and by any law enforcement officer based on reasonable suspicion of a parole violation or criminal activity. L. 2012, ch. 70, secs. 2 and 3; see Chapman, 51 Kan. App. 2d at 413. We will return to Chapman later in our analysis.
In Toliver’s supplemental brief he concedes that, as a parolee, he has a “greatly diminished expectation of privacy,” especially because he was informed that he may be subject to search or seizure by a KDOC parole officer as a condition of release on parole. But Toliver also maintains “the initial entry into the home must be justified” by the provisions of K.S.A. 2014 Supp. 22-3717(k).
Toliver focuses his briefing on the presence of the detectives during the search: “Given that this was a search by law enforce *353 ment, and not KDOC, then K.S.A. [2014 Supp.] 22-3717(k)(3) should be the specific section to apply.” According to Toliver, the detectives violated tins statute because at the time the apartment was entered, as found by the district court, there was no reasonable suspicion that Toliver had violated his parole or engaged in criminal activity. Toliver characterizes the search as an impermissible “fishing expedition” that was arbitrary and capricious. At oral argument, in response to questions from our court, Toliver also maintained that K.S.A. 2014 Supp. 22-3717(k) only applies to searches of parolees, not their residences or property.
In its supplemental briefing, the State agrees with Toliver that, as a parolee, he has “significantly diminished” privacy interests. The State also agrees that K.S.A. 2014 Supp. 22-3717(k) is applicable to this case “because it sets the parameters for reasonableness of a search of a parolee in Kansas, while staying within the bounds of the Fourth Amendment.” Citing Samson v. California, 547 U.S. 843, 844, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006), the State considers K.S.A. 2014 Supp. 22-3717(k) an “expression that Kansas follows the precedent recognized by the Supreme Court of the United States; that suspicion-less searches of parolees are reasonable under the Fourth Amendment.”
The State counters Tolivers argument that, under the circumstances, the detectives should not have participated in the search. Because K.S.A. 2014 Supp. 75-5217(a) gives authority to a KDOC parole officer to deputize any other officer with arrest power, the State extrapolates that “the legislators intended wide discretion for parole officers to conduct searches.” The State concludes: “The statute clearly gives the parole officer authority to search the defendant’s home; requesting die assistance of other law enforcement officers to assist in the search does not make it unreasonable.”
Resolution of this appeal, as clarified by the parties’ supplemental briefing and oral arguments, requires our interpretation of the Fourth Amendment to the United States Constitution and K.S.A. 2014 Supp. 22-3717(k) and will determine whether the KDOC parole officers’ search of Toliver’s residence was in compliance with our Constitution and Kansas law.
A summaiy of our rules of statutory construction is in order. In *354 terpretation of a statute is a question of law over which appellate courts have unlimited review. State v. Eddy, 299 Kan. 29, 32, 321 P.3d 12, cert. denied 135 S. Ct. 91 (2014). Our most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. State v. Williams, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). To ascertain legislative intent, we first look at the statutory language, giving common words their ordinary meanings. State v. Phillips, 299 Kan. 479, 495, 325 P.3d 1095 (2014). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. State v. Brooks, 298 Kan. 672, 685, 317 P.3d 54 (2014). Finally, where there. is no ambiguity, our court need not resort to statutory construction. Only if the statute’s language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature s intent. Phillips, 299 Kan. at 495.
At the outset, we read the plain language of K.S.A. 2014 Supp. 22-3717(k)(2) to require that parolees agree in writing to be subject to search or seizure by a KDOC parole officer, day or night, with or without a search warrant and with or without cause. Thus, in Kansas, Toliver was required to agree in writing to be subject to a suspicionless search and seizure by Neubert during the pendency of his parole. As discussed more fully later, K.S.A. 2014 Supp. 22-3717(h) thus establishes and defines a significantly diminished expectation of privacy for parolees in our state.
It is apparent, however, that the provisions of K.S.A. 2014 Supp. 22-3717(k) which legislatively defined Tolivers diminished privacy interests are at variance with condition 12 of the Parole Agreement that Toliver was required to sign prior to release on parole. While the statute addresses parolees being subject to suspicionless searches and seizures, the Parole Agreement required Toliver to be subjected “to a search of [his] person, residence, and any other property under [his] control by parole officers . . . with or without a search warrant and with or without cause.” (Emphasis added.)
In short, the diminished privacy interests as formulated by K.S.A. 2014 Supp. 22-3717(k) relate only to the parolee personally, *355 unlike the diminished privacy interests set forth in condition 12 of the Parole Agreement which relate not only to the parolee but also to the parolee’s residence and property. Quite simply, condition 12 of the Parole Agreement more severely limits Toliver’s privacy interests than Kansas law allows..
At this point we must address the dissents reference to contrary dicta in Chapman. The issue in Chapman was whether the State could invoke K.S.A. 2012 Supp. 22-3717(k)(3) to support a police search of a parolee’s home when the parolee had not actually signed a written parole agreement. The panel focused on statutory language which required that “a parolee ‘shall agree in writing.’ ” 51 Kan. App. 2d at 413 (quoting K.S.A. 2012 Supp. 22-3717[k][3]). This court held that “a parolee’s written agreement is, in fact, a condition for a law enforcement officer’s search of a parolee’s home based on reasonable suspicion.” 51 Kan. App. 2d at 413.
The dissent states that although the Chapman panel thoroughly examined the statute, it “nowhere intimated that the statute may limit the object of the search to a parolee’s person.” 52 Kan. App. 2d at 363 (Gardner, J., dissenting). But the issue that Toliver presents for our consideration was never raised, briefed, or argued in Chapman. And as our colleague properly points out at the beginning of her dissent, as a general rule, appellate courts will not address issues not raised and briefed on appeal. See State v. Boleyn, 297 Kan. 610, 633, 303 P.3d 680 (2013). The Chapman panel was never asked whether the statutory language in K.S.A. 2014 Supp. 22-3717(k)(2) applies to the search qf a home at all.
Moreover, “ ‘[d]icta in a court opinion is not binding, even on the court itself, because the court should consider the issue in light of the briefs and arguments of counsel when the question is squarely presented for decision/ [Citation omitted.]” State v. Cummings, 297 Kan. 716, 725-26, 305 P.3d 556 (2013). Having considered the question squarely presented to us by the supplemental briefing and oral arguments, we cannot ignore the conflict between K.S.A. 2014 Supp. 22-3717(k)(2) and the Parole Agreement in the present case.
What is the constitutional significance of this variance between K.S.A. 2014 Supp. 22-3717(k)(2) and condition 12 of the Parole Agreement? Viewed, simply based on the stipulated case facts, *356 Toliver was not subjected to a suspicionless search and seizure as authorized by Kansas law. Rather, Tolivers residence was subjected to a suspicionless search as permitted by condition 12 of the Parole Agreement. Importantly, the fact that the Parole Agreement permitted a search and seizure not authorized by Kansas law implicates the Fourth Amendment.
The United States Supreme Court has upheld a California law, similar to our Kansas statute, which required that parolees “shall agree in writing to be subject to search or seizure by a parole officer or other peace officer[, which is not arbitrary, capricious, or harassing,] at any time of the day or night, with or without a search warrant and with or without cause/ [Citation omitted.]” Samson, 547 U.S. at 846. In Samson, a police officer conducted a suspicion-less search of Samsons person and the California Court of Appeals deemed the search constitutional under the authority of the California law. The United States Supreme Court subsequently granted certiorari to “answer a variation of the question . . . left open in United States v. Knights, 534 U.S. 112, 120, n.6[, 122 S. Ct. 587, 151 L. Ed. 2d 497] (2001),” i.e., whether a release condition can so diminish or eliminate a released prisoners reasonable expectation of privacy that a suspicionless search would not offend the Fourth Amendment. Samson, 547 U.S. at 847.
To determine the constitutionality of the search, the Samson majority examined the “’totality of the circumstances ... by assessing, on the one hand, the degree to which [the search] intrude[d] upon [Samson]’s privacy and, on the other, the degree to which it [was] needed for the promotion of legitimate governmental interests.’ [Citation omitted.]” 547 U.S. at 848. With respect to Samson’s privacy interests, the majority explained that “parolees . . . have severely diminished privacy expectations by virtue of their status alone” because “ parole is an established variation on imprisonment of convicted criminals.’” 547 U.S. at 850-52. The majority then determined that Samson did not have “an expectation of privacy that society would recognize as legitimate,” as it found “ ‘salient’ ” the fact that the parole search condition was “ ‘clearly expressed’ ” to Samson when he signed an order submitting to the condition. 547 U.S. at 852. The majority concluded that Samsons *357 unambiguous awareness of the condition “ ‘significantly diminished [his] reasonable expectation of privacy.’” 547 U.S. at 852.
Regarding California’s concerns, the majority explained that states have “an “ ‘overwhelming interest’ ” in supervising parolees because ‘parolees.. . are more likely to commit future criminal offenses.’ [Citation omitted.]” 547 U.S. at 853. Likewise, “a State’s interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.” 547 U.S. at 853. The majority then noted that the California Legislature’s finding that imposing an individualized suspicion requirement upon parolee searches would undermine its ability to effectively supervise parolees and promote public safety made “eminent sense” due to Californias 68% to 70% recidivism rate among its parolee population. 547 U.S. at 853-54.
After balancing Samson’s diminished privacy interests with California’s need to effectively supervise its parolees, the majority held: “The Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.” 547 U.S. at 857. In reaching this conclusion, the majority rejected Samson’s observation that “the majority of States and the Federal Government have been able to further similar interests in reducing recidivism and promoting reintegration, despite having systems that permit parolee searches based upon some level of suspicion.” 547 U.S. at 855. The majority explained:
“[Samson] s reliance on die practices of jurisdictions other Üian California, however, is misplaced. That some States and the Federal Government require a level of individualized suspicion is of little relevance to our determination whether California’s supervisory system is drawn to meet its needs and is reasonable, taking into account a parolee’s substantially diminished expectation of privacy.” 547 U.S. at 855.
In Toliver’s case, like Samson, we are presented with a state law that defines a parolee s diminished expectation of privacy and authorizes what the legislature deems a reasonable search under the circumstances. This legislative formulation of a parolee’s diminished privacy interests and authorization to search is critical for Fourth Amendment analysis. Although Samson focused on the legality of a California statute, it has been interpreted as standing for *358 the proposition that “’[t]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee’ when such a search is authorized by state law. [Citation omitted.]” (Emphasis added.) United States v. Mabry, 728 F.3d 1163, 1167 (10th Cir. 2013), cert. denied 134 S. Ct. 1354 (2014).
In Mabry, the Tenth Circuit Court'of Appeals explained how individual state laws relating to parolee searches may set the parameters of what constitutes a reasonable search and seizure under the Fourth Amendment:
“[I]n Samson, ‘[t]he Court noted “that some States and the Federal Government require a level of individualized suspicion,” and strongly implied that in such jurisdictions a suspicionless search would remain impermissible.’ [Citations omitted.] Thus, ‘[p]arolee searches are ... an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law.’ [Citation omitted.]” (Emphasis added.) 728 F.3d at 1167 (quoting United States v. Freeman, 479 F.3d 743, 747 [10th Cir. 2007]).
Our Supreme Court also has weighed in regarding Sampson in State v. Bennett, 288 Kan. 86, 200 P.3d 455 (2009). In Bennett, the Kansas Supreme Court considered whether a condition of probation that required the probationer to submit to random, noncon-sensual, suspicionless searches violated the Fourth Amendment. Noting that the United States Supreme Court in Sampson posited the question before the Court as “ whether a suspicionless search, conducted under the authority of this statute [, Cal. Penal Code Ann. § 3067[a] [West 2000], violates the Constitution,’ [citation omitted,]” our Supreme Court concluded: “After Samson, it is clear that parolees may be subjected to suspicionless searches authorized by state law as long as such searches are not arbitrary or done for harassment purposes.” (Emphasis added.) Bennett, 288 Kan. at 95-96.
Consistent with Sampson’s and Bennett’s holdings, we conclude that K.S.A. 2014 Supp. 22-3717(l<) defines the diminished privacy interests of Kansas parolees and sets the parameters by which a parolee may be subject to a reasonable search and seizure under the Fourth Amendment. Consistent with the diminished privacy interests, K.S.A. 2014 Supp. 22-3717(k)(2) allows KDOC parole officers to subject parolees to suspicionless searches and seizures. The statute does not, however, empower KDOC parole officers *359 to further infringe upon the privacy expectations of parolees by sanctioning the suspicionless searches of their residences and other property under their control as provided by the Parole Agreement. As a result, the variance between K.S.A. 2014 Supp. 22-3717(k)(2) and Tolivers Parole Agreement is consequential. While the Kansas Legislature has clearly authorized suspicionless searches of a parolee, it has not authorized suspicionless searches of the parolee’s residence or property.
Without the essential statutory authorization promulgated in K.S.A. 2014 Supp. 22-3717(k)(2), we conclude that condition 12 of the Parole Agreement providing for suspicionless searches of To-liver’s residence or any other property under the parolee’s control violates the Fourth Amendment. As a result, the contraband seized from Toliver’s residence should have been suppressed under the exclusionary rule. See State v. Morris, 276 Kan. 11, Syl. ¶ 8, 72 P.3d 570 (2003).
Our holding that K.S.A. 2014 Supp. 22-3717(k) does not authorize the suspicionless search of a parolee’s residence is based upon a plain reading of the statute. This plain reading, however, is supported by a related 2012 amendment. In the same act which amended K.S.A. 2014 Supp. 22-3717, the legislature also amended K.S.A. 2014 Supp. 21-6607, the statute controlling the conditions of probation or suspended sentence. See L. 2012, ch. 70, secs. 1 and 2. In this amendment, the legislature directed drat probationers shall “be subject to searches of the defendant’s person, effects, vehicle, residence and property by a court services officer, a community correctional services officer and any other law enforcement officer based on reasonable suspicion of the defendant violating conditions of probation or criminal activity.” (Emphasis added.) K.S.A. 2014 Supp. 21-6607(c)(5). It is noteworthy that in 2012, in the very same act, the Kansas Legislature established very different provisions relating to search and seizure for individuals in analogous postconviction situations—parolees and probationers.
Our dissenting colleague asserts it is unreasonable to conclude from this difference in language that the legislature intended to grant parolees greater privacy rights than probationers. But it is not for us to question the wisdom or second-guess the actions of *360 the legislature in its formulation of differing privacy expectations and authorizing different kinds of searches for parolees and probationers. That is not the court’s role. We are required, however, to follow the well-known rule of statutory construction: Where the legislature has demonstrated an ability to express its intent through clear statutory language, courts will not read that same intent into another statute where the legislature has omitted such language. See State v. Hopkins, 295 Kan. 579, 584, 285 P.3d 1021 (2012); State v. Lovett, 17 Kan. App. 2d 450, 453, 839 P.2d 53, rev. denied 252 Kan. 1094 (1992).
We must take the legislature at its word. If it intended for Kansas parolees to be subject to searches of their residences and property, it is apparent the legislature knew how to draft that specific language—if only because the legislature did, in fact, use that specific language in the same act when addressing the search and seizure rights of probationers.
Given our holding suppressing the contraband found in Tolivers apartment, we decline to address the second issue raised by Toliver that the search of Tolivers apartment by tire detectives violated K.S.A. 2014 Supp. 22-3717(k)(3) because the law enforcement officers did not have reasonable suspicion that Toliver had violated the conditions of his parole or engaged in criminal activity.
Toliver’s conviction is reversed, and the case is remanded to the district court with directions to grant the motion to suppress evidence and for further proceedings.
[[Image here]]