NOT DESIGNATED FOR PUBLICATION

No. 117,994

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JERRY A. ANDERSON,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 2, 2018. Affirmed.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.

Before MALONE, P.J., SCHROEDER, J., and BURGESS, S.J.

MALONE, J.:  This is the second interlocutory appeal by the State challenging the district court's suppression of evidence obtained from a warrantless search of Jerry A. Anderson's residence. For the reasons stated herein, we affirm the district court's decision granting the motion to suppress.

The facts leading up to the search and the results of the search are set out in our prior opinion, *State v. Anderson*, No. 116,140, 2017 WL 1297998, at *1 (Kan. App. 2017) (unpublished opinion) (*Anderson I*), and we repeat them here:

"The State's complaint against Jerry A. Anderson charged him with aggravated (armed) robbery of a Loan Max store in Hutchinson, Kansas. The security video from the store showed a black male, wearing a new blue and red Atlanta Braves baseball cap, a black do-rag, a long-sleeved blue shirt, blue jeans, and white tennis shoes.

"Security video from Loan Max and two nearby businesses showed the robber arriving and leaving in a black vehicle. One of the detectives believed the driver could be Adina Smith because he knew she drove a black Saturn Ion. About 3 1/2 hours after the robbery, detectives observed Smith going to a cable company and paying her overdue cable bill. The detectives followed Smith to a residence and learned that the utilities at the residence were in Anderson's name.

"The Hutchinson Police Department showed a 7-person line up to the Loan Max employee who was robbed, and she selected two photographs, one of which was of Anderson. The detectives learned that Anderson was on parole for a 2007 aggravated robbery conviction. Detectives then contacted Anderson's parole officer, Julie Novinger, and asked her to view the video of the robbery. Novinger did so and identified the man in the video as Anderson.

"At the detectives' suggestion, Novinger asked Anderson to come to her office for drug testing. When Anderson arrived the next day, three detectives questioned and arrested him. When Anderson heard them talking about searching his residence, he verbally consented for them to do so. The detectives then performed a warrantless search of Anderson's residence in the presence of Anderson and Novinger. As a parolee, Anderson had signed an agreement containing the standard conditions of release that require the parolee to submit to search of his person, residence, or any other property under his control by any law enforcement officer based upon a reasonable suspicion of violations of the conditions of postrelease supervision or reasonable suspicion of criminal activity. Officers found a black $CO_2$ BB gun, an Atlanta Braves baseball cap, a black do-rag, blue jeans, and white tennis shoes, which closely matched the eyewitness' description of the clothing worn by the robber.

"After being charged with aggravated robbery, Anderson filed two motions: one to suppress the identification testimony by the Loan Max Clerk, and one to suppress the evidence found at his residence during the search. At the evidentiary hearing, the State argued the search was supported by two grounds: consent and reasonable suspicion of a crime by Anderson, a parolee. Anderson's counsel argued the search lacked reasonable suspicion. The district court took the motions under advisement and later denied the

2

motion to suppress eyewitness testimony but granted the motion to suppress the clothing evidence."

In the prior appeal, the State argued three grounds to justify the warrantless search: the search was authorized by K.S.A. 2014 Supp. 22-3717(k); the search was authorized by Anderson's written parole agreement; and the search was authorized by Anderson's verbal consent. Our prior opinion did not resolve whether the search was justified based on the statute or the parole agreement. As to consent, we found that we could not conduct a meaningful review because the district court's findings of fact and conclusions of law were inadequate. We remanded for further proceedings regarding whether the consent exception applies.

On remand, the parties submitted proposed findings of fact and conclusions of law on the consent issue, and the district court held a hearing and considered arguments of counsel. The district court reconvened and made findings from the bench. Specifically, the district court found that based on the evidence originally presented at the hearing on the motion to suppress, the State failed to meet its burden of establishing that Anderson's consent was "unequivocal, specific and freely given" without duress. The district court again granted Anderson's motion to suppress the evidence obtained from the search of his residence. The State timely appealed. Additional facts will be discussed in the opinion.

CONSENT

In this appeal, the State argues that the district court erred in finding that the search of Anderson's residence was not justified based on his verbal consent. Specifically, the State argues that the district court's "ruling that consent was not a valid exception to the warrant requirement was inconsistent with the evidence presented." Conversely, Anderson argues that there was substantial competent evidence supporting

the district court's decision that any consent to search his residence "was not freely and unequivocally given."

A district court's decision on a motion to suppress is subject to a bifurcated standard of review. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Neighbors,* 299 Kan. 234, 239, 328 P.3d 1081 (2014). One of those exceptions is consent. When relying on the consent exception to the warrant requirement, the State bears the burden to establish the scope and voluntariness of the consent. *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007). To establish valid consent, the State must prove:  (1) clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the absence of duress or coercion, express or implied. *State v. Cleverly*, 305 Kan. 598, 613, 385 P.3d 512 (2016). The existence and voluntariness of a consent to search and seizure is a question of fact that the trier of fact must decide in light of the totality of the circumstances. *State v. Jones*, 279 Kan. 71, 77, 106 P.3d 1 (2005) (citing *Ohio v. Robinette*, 519 U.S. 33, 39-40, 117 S. Ct. 417, 136 L. Ed. 2d 347 [1996]).

Here, at the original hearing on the motion to suppress, Julie Novinger, Anderson's parole officer, testified that at the suggestion of police detectives, she asked Anderson to come to her office for drug testing. When Anderson arrived the next day, three detectives questioned and arrested him for the Loan Max robbery. Novinger testified that when Anderson heard the detectives talking about searching his residence, he verbally consented for them to do so. The only evidence offered by the State to show consent was

4

Novinger's testimony that she overheard Anderson give consent to the detectives to search his residence. Significantly, the State did not elicit testimony directly from the detectives about Anderson giving consent to the search. The State argues that Novinger's testimony was "undisputed, uncontroverted," and uncontested and thus, of itself, establishes that Anderson consented. However, the mere production of some testimony does not compel a finding of consent; "clear and positive testimony" is required.

Novinger did not give a clear and positive answer to the question: "It's your statement that law enforcement were asking for consent?" Instead of answering yes or no, she responded: "Law enforcement—he agreed with law enforcement to search it. For them to search his house, yes." She testified on direct as follows:

> "Q. [THE STATE]: Now, while you've got Jerry Anderson in your office with the police department May 7th, 2015, did you just tell him, I'm going to go search your house?
> "A. No.
> "Q. How did you word that to him?
> "A. No. The officers had mentioned about searching the house and if he agreed to a search and he did.
> "Q. So he told the officers they could search the house?
> "A. Correct."

Although the above-quoted testimony would support a finding that Anderson's verbal consent was unequivocal and freely given, Novinger also testified on cross-examination as follows:

> "Q. [DEFENSE COUNSEL]: Now, you testified that you were in your office when Mr. Anderson purportedly gave law enforcement officers permission to search his house?
> "A. Yes.
> "Q. Did he do this verbally or in writing?

5

"A. Verbally.

"Q. Verbally. He was on parole. He didn't need to give permission to search the house, did he?

"A. No.

"Q. *It was going to happen whether he consented or not?*

"A. *According to the conditions, yes.*

. . . .

"Q. Is there protocol to get consent in writing in your office?

"A. I've never, never had that, so it's just a standard of the condition. So by signing those standard conditions he agrees to it.

"Q. *So you weren't extracting consent out of Mr. Anderson because you could already do that? He was on parole?*

"A. *Yes.*" (Emphases added.)

The district court heard testimony that Anderson was handcuffed and there were three or more officers present at Novinger's office at the time of the arrest when, according to Novinger, Anderson consented to the search. As Novinger testified, when Anderson agreed to the search of his residence, it was clear that the officers were going to search the residence anyway with or without Anderson's consent. Testimony showed that Novinger, the officers, and Sergeant Tyson Meyers, who was in charge of the investigation, each believed that they had authority to search the residence because of Anderson's parolee status. This setting cuts against a finding of voluntariness.

The district court ruled that "there was no evidence to even remotely support findings that I could justify finding that consent was proven as an exception." The district court stated the correct test—that the State must produce "clear and positive testimony" that consent was "unequivocal, specific and freely given"—and found that Novinger's testimony failed to meet that standard. The district court found that there was no evidence of consent other than through Novinger's secondhand testimony, and specifically noted that the two law enforcement officers who testified at the suppression hearing made no mention that Anderson consented to the search of his residence. Essentially, the district

6

court made a negative finding that the State failed to prove that Anderson's verbal consent to the search was unequivocal, specific, and freely given. The record contains substantial competent evidence supporting the district court's factual findings which in turn supports the court's legal conclusion that the State failed to prove that Anderson validly consented to the search. Thus, we will not disturb the district court's ruling that the search of Anderson's residence was not justified based on his verbal consent.

AUTHORIZATION FOR THE SEARCH UNDER K.S.A. 2014 SUPP. 22-3717(k)

In *Anderson I*, the State argued that the warrantless search of Anderson's residence was justified based on his parole agreement. As a parolee, Anderson had signed an agreement containing the standard conditions of release that require the parolee to submit to the search of his or her person, residence, or any other property under his or her control by any law enforcement officer based upon a reasonable suspicion of violations of the conditions of postrelease supervision or reasonable suspicion of criminal activity. But in the current appeal, the State merely recites Novinger's testimony that she had Anderson sign a parole agreement and her testimony as to the content of the agreement. The State makes no separate argument that the parole agreement justified the warrantless search of Anderson's residence. A point raised incidentally in a brief but not argued therein is deemed waived or abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015).

However, the State does renew its argument made in *Anderson I* that the warrantless search of Anderson's residence was authorized by statute. Specifically, K.S.A. 2014 Supp. 22-3717(k)(3) states: "Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by any law enforcement officer based on reasonable suspicion of the person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity." An appellate court exercises unlimited review over questions of statutory construction. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

As it did in *Anderson I*, the State fails to identify the version of the statute it is using. The State's brief cites "K.S.A. 22-3717(k)(3)," but quotes the amended version in effect in 2016, not the one in effect at the time of the search of Anderson's residence. The State's brief acknowledges "that K.S.A. 22-3717(k) does not authorize the suspicionless search of a parolee's residence." However, the State's brief "disagrees with the Trial Judge's conclusion that the search was conducted without reasonable suspicion that [Anderson] had committed criminal activity." The remainder of the State's brief on this issue focuses on the evidence that the police detectives, in fact, had reasonable suspicion that Anderson had committed criminal activity. But the State's brief misses the point and completely ignores the fact that the 2014 version of the statute in effect at the time of the search of Anderson's residence only expressly authorized the search of "parolees and persons on postrelease supervision" based on reasonable suspicion of a parole violation or criminal activity, and the statute did not expressly authorize the search of a parolee's residence. See K.S.A. 2014 Supp. 22-3717(k)(3). The statute was subsequently amended to expressly authorize the search of the parolee's "effects, vehicle, residence and property" by any law enforcement officer based on reasonable suspicion of a parole violation or criminal activity. See K.S.A. 2016 Supp. 22-3717(k)(3).

As Anderson points out in his brief, the district court's suppression of the evidence seized from the warrantless search of Anderson's residence did not turn on whether the law enforcement officers had reasonable suspicion of criminal activity. Instead, the district court granted Anderson's motion to suppress on the ground that the statute in effect at the time of the search did not expressly authorize the search of a parolee's residence, with or without reasonable suspicion of criminal activity.

This court previously addressed the precise issue of whether K.S.A. 2014 Supp. 22-3717(k) authorizes the search of a parolee's residence in *State v. Toliver*, 52 Kan. App. 2d 344, 368 P.3d 1117, *rev. granted* 305 Kan. 1257 (2016). In *Toliver*, the specific issue was whether K.S.A. 2014 Supp. 22-3717(k)(2) authorizes the suspicionless search by a

8

parole officer of the parolee's residence. The majority held that the plain language of the statute authorizes searches only of the parolee's *person*, not of his or her residence. 52 Kan. App. 2d at 359. Under the majority's interpretation of the statute, the search of Anderson's residence was unlawful. Judge Gardner's dissent in *Toliver* concluded that the statute does not designate the *object* of the search but only limits *who* may conduct a search and *under what circumstances* a search may be conducted. 52 Kan. App. 2d at 363. Under the dissent's interpretation of the statute, the search of Anderson's residence was lawful, so long as it was supported by reasonable suspicion.

This court filed its published opinion in *Toliver* on January 29, 2016. When the district court initially ruled on Anderson's motion to suppress in June 2016, *Toliver* was subject to a petition for review by the Kansas Supreme Court. When this court filed its unpublished opinion in *Anderson I* in April 2017, *Toliver* was still subject to review. The Kansas Supreme Court heard oral arguments in *Toliver* on May 1, 2017. Presumably, the court will eventually decide the case. For now, we adopt the reasoning of the majority opinion in *Toliver* that under the plain language of K.S.A. 2014 Supp. 22-3717(k), the statute authorizes searches only of the parolee's person, not of his or her residence. 52 Kan. App. 2d at 359. Although *Toliver* specifically addresses searches of a parolee's residence under K.S.A. 2014 Supp. 22-3717(k)(2), its rationale applies equally to searches of a parolee's residence under subsection (k)(3) of the statute. Thus, we conclude that the search of Anderson's residence was not authorized by the statute in effect at the time of the search, and for this reason the district court did not err in suppressing the evidence obtained from the warrantless search of Anderson's residence. If it is ultimately determined that K.S.A. 2014 Supp. 22-3717(k) authorizes the search of a parole's residence as well as the parolee's person, then we would agree with the State's argument that the law enforcement officers had reasonable suspicion that Anderson had engaged in criminal activity at the time they searched his residence without a warrant.

Affirmed.

9