NOT DESIGNATED FOR PUBLICATION

No. 112,655

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GLENN STINSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed May 27, 2016. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.


*Per Curiam*:  In this appeal, Defendant Glenn Stinson contests his convictions for felony possession of marijuana and misdemeanor possession of drug paraphernalia. He has asserted three substantive grounds for relief and an argument for cumulative error. The members of the panel agree Stinson is entitled to no relief and, therefore, affirm the convictions. But the members of the panel are not united in their reasoning. This opinion briefly sets forth the issues and the general position of the judges. It is followed by a concurring opinion from each judge.

1

First, Stinson challenges an introductory instruction the district court gave the jurors at the start of the trial advising them to follow the district court's admonitions precluding outside communication or investigation about the case. The panel agrees the instruction was not erroneous.

Second, Stinson challenges questions and comments from the prosecutor during voir dire related to the jurors' decisionmaking process. Judge Buser and Judge Schroeder find no error in the statements. Judge Atcheson would find the remarks to be improper, though indirect, comment on jury nullification but which caused no material prejudice to Stinson.

Finally, Stinson challenges the use of his earlier Missouri conviction to elevate the marijuana conviction from a misdemeanor to a felony, as provided in K.S.A. 2015 Supp. 21-5706(c)(2)(B). Judge Atcheson and Judge Schroeder find Stinson has not provided a sufficient record on appeal to review the point and, therefore, deny relief. Judge Buser would concur in that result.

Affirmed.

＊＊＊

ATCHESON, J., concurring:  A Johnson County District Court jury convicted Defendant Glenn Stinson of possession of both marijuana, a felony, and drug paraphernalia, a misdemeanor. Stinson challenges the resulting judgment on several grounds including the prosecutor's examination of potential jurors in a way implicating jury nullification and the manner in which the prosecution proved his past conviction for marijuana possession to charge a felony in this case. In light of the appellate record, I find nothing requiring reversal on the points raised and, therefore, would affirm the district court.

Given the issues on appeal, the facts and circumstances prompting the charges are irrelevant. I note only that in September 2013, a Merriam police officer approached Stinson, who was sitting in a parked car, as she responded to an unrelated call. The officer saw what she took to be marijuana Stinson had spread out on a plastic disk in front of him. The observation proved correct. Stinson also had at least one container with more marijuana in it.

The district attorney charged Stinson with possession of marijuana and relied on an earlier Missouri conviction to treat him as a repeat offender, making the crime a felony. See K.S.A. 2015 Supp. 21-5706. The Missouri conviction figures in the issues on appeal. The district attorney also charged him with possession of drug paraphernalia. See K.S.A. 2015 Supp. 21-5709. A jury convicted Stinson as charged in May 2014, and the district court later imposed a controlling sentence of 11 months in prison and placed Stinson on probation for 18 months. Stinson timely appealed and has since apparently been granted an early release from his probation. I take up the issues on appeal in the order Stinson has presented them.

Stinson first complains about an instruction the district court gave the jurors at the outset of the trial to the effect that their discussing the case with others or undertaking independent investigation could lead to a mistrial imposing "a tremendous expense and inconvenience to the parties, the Court, and the taxpayers." Stinson likens the instruction to an *Allen* charge given ostensibly deadlocked jurors informing them a jury's failure to reach a verdict burdens the parties. See *State v. Salts*, 288 Kan. 263, 265-66, 200 P.3d 464 (2009) (error to instruct jurors, even at start of deliberations, that their failure to agree on a verdict "would be a burden on both sides").

After Stinson filed his brief, the Kansas Supreme Court rejected the same argument analogizing the preliminary instruction warning against inappropriate juror

activity to an *Allen*-type instruction given to a deliberating jury. In *State v. Tahah*, 302 Kan. 783, 794-95, 358 P.3d 819 (2015), the court held a preliminary instruction equivalent to the one Stinson challenges here to be legally appropriate and, hence, free of error. The *Tahah* decision necessarily dispatches this point adversely to Stinson.

Stinson next challenges a portion of the prosecutor's voir dire of potential jurors regarding their attitudes about the criminalization of marijuana possession and their obligation to follow the law in arriving at a verdict. The prosecutor and Stinson's lawyer understandably wanted to explore the jurors' attitudes given the nature of the case and were appropriately permitted to inquire.

During the prosecutor's examination, however, the following exchange took place:

"[PROSECUTOR]:  The first [topic] is your obligation to follow the law as jurors in this case, one of the most—the most important issue here. [Juror C], what if you disagree with the law the way it's written. Do you get to decide someone is not guilty because you think the law is wrong, unfair or even stupid?
"PROSPECTIVE JUROR C: No.
"[PROSECUTOR]:  Okay. You would agree you have to follow the law?
"PROSPECTIVE JUROR C: Yes."

Stinson's trial lawyer did not object. But the failure of a criminal defendant to object to a prosecutor's comments during voir dire or argument does not foreclose appellate review for possible error. See *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012).[*]

[*]In this case, the prosecutor's discussion of a juror's responsibilities in arriving at a verdict was fairly elaborate. He asked similar questions of other potential jurors. The prosecutor also asked another juror what he considered "the appropriate way" to change a law he thought to be stupid or unfair. The juror responded:  "Through the legislative system." The prosecutor then asked the jury panel generally if "anybody disagrees with that statement?" The transcript reflects none of the potential jurors indicated disagreement.

On appeal, Stinson contends the initial question and response I have cited amounted to prosecutorial misconduct by impermissibly impinging on jury nullification. See *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014) (jury instruction mandating conviction if elements of offense have been proved—using word "will" rather than more conditional "should"—erroneous because it "forbade" the jury from engaging in nullification). The issue requires us to venture into the netherworld of nullification. My colleagues take a short trip there and categorically find no error. See Buser, J. concurring, slip op. at 13; Schroeder, J., concurring, slip op. at 13. I tread more gingerly and pause to explain why.

In a criminal case, a jury's verdict of not guilty is essentially unimpeachable and irreversible. As a result, a jury can with impunity acquit a defendant in complete disregard of the applicable legal principles, the evidence, or both, thereby allowing an obviously guilty defendant to walk free. A jury's ability to nullify the law and the facts in a criminal case has deep historical roots. Nullification is often held up as a great equalizer allowing ordinary citizens to strike a blow for fundamental fairness against abusive government overreach. In given times and places, that may be true. For example, in perhaps the most celebrated case of nullification, a jury acquitted colonial journalist John Peter Zenger of criminal libel in 1735 for publishing biting commentaries on the royal governor of New York. In 1973, a jury acquitted 28 activists, including several priests and ministers, of criminal charges for seizing draft records and other documents from a federal office building in Camden, New Jersey, to protest the war in Vietnam. But jury nullification has an ignominious side—a side regularly on display in the last century as all-white juries acquitted their racial cohorts of violent crimes against African-Americans who were not infrequently targeted for having the temerity to seek equal treatment under the law. See generally *State v. McClanahan*, 212 Kan. 208, 510 P.2d 153 (1973); Ilya Somin, "Rethinking jury nullification," The Washington Post, August 7, 2015, (accessed March 30, 2016) (hardcopy on file with Clerk of the Appellate Courts.)

Nullification rests on an unchecked power of the jurors, not a legal right belonging to them or to a defendant. That power actually conflicts with the duty of jurors to follow the law and fairly find the facts to render a "true" verdict. See *State v. Cash*, No. 111,876, 2015 WL 5009649, at *4 (Kan. App. 2015) (unpublished opinion). Jurors in criminal cases are typically sworn "to try the case conscientiously and [to] return a verdict according to the law and the evidence," as are civil jurors. K.S.A. 2015 Supp. 60-247(d); *Cash*, 2015 WL 5009649, at *4.

One of the paradoxes of jury nullification lies in the silence that shrouds it. Although jurors hold the power, nobody involved in the criminal justice process—the parties, the lawyers, or the district court—may so much as mention that power in their presence. See *McClanahan*, 212 Kan. at 215-16 (no jury instruction should be given on nullification); *State v. Chambers*, No. 111,390 2015 WL 967595, at *8-9 (Kan. App. 2015) (unpublished opinion) (district court properly precluded defense counsel from arguing for jury nullification). So a defense lawyer could not question potential jurors in a manner suggesting they might disregard the law and evidence if chosen to hear the case. Nor could he or she in closing argument ask the jurors to acquit the defendant in disregard of the law or the evidence. That is the rule in Kansas and elsewhere. *Chambers*, 2015 WL 967595, at *8-9 (citing authority from numerous federal and state courts precluding discussion with or argument to jurors promoting nullification).

That brings me to the prosecutor's inquiry and the juror's response during voir dire. As posed, the question taken with the answer effectively engenders a false legal construct. In a criminal case, jurors *do* get to decide the defendant is not guilty because they think the law is stupid (or for other extraneous reasons)—that's the essence of jury nullification. They shouldn't, but they can. Given the well-accepted prohibition on any suggestion to prospective or sitting jurors that they hold a power of nullification, the converse would seem to be a reasonable corollary: The parties ought not be allowed to

6

affirmatively imply or assert there is no such power. The prosecutor's question and the prospective juror's answer here essentially created just that sort of affirmative representation.

During voir dire, the lawyers can ask potential jurors both if they understand they have a *duty* to follow the law as explained by the district court and if they would have some difficulty fulfilling that duty. Proper inquiries would be directed to and framed around the jurors' duty or obligation. More abstract or indefinite questioning much more readily spills over into the nullification netherworld. The prosecutor's question here was not tethered to duty and really touched directly on jury nullification without using that term.

I am disposed to say the prosecutor improperly questioned the prospective juror by discussing what amounts to jury nullification—a topic that is supposed to be off-limits to both sides in a criminal trial. And I would suppose Stinson has some claim for relief. In *Smith-Parker*, the Kansas Supreme Court held that a jury instruction forcefully, if implicitly, directing jurors away from possible nullification was properly weighed in the defendant's successful request for a new trial based on cumulative error. 301 Kan. at 164-65, 168. With those givens, I now examine the ostensible misstatement for prejudice to the defendant using the well-established criteria deployed for that purpose:

> "'(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22-24,] 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) [conclusion beyond a reasonable doubt that the error . . . changed the result of the trial], have been met. [Citations omitted.]'" *State v. McReynolds,* 288 Kan. 318, 323, 202 P.3d 658 (2009).

7

The Kansas Supreme Court has consistently adhered to this test. See *State v. Hudgins*, 301 Kan. 629, 646-47, 346 P.3d 1062 (2015); *State v. De La Torre*, 300 Kan. 591, 608, 331 P.3d 815 (2014). Applying those criteria, I find no material prejudice and no reversible error.

The prosecutor's inquiry I consider improper cannot be characterized as gross and flagrant, especially given the state of the law on jury nullification. As I have said, the general subject matter—potential jurors' willingness and ability to fulfill a duty to follow the law—was entirely appropriate for the selection process. That seems particularly true when a defendant has been charged with simple possession of marijuana. I have serious reservations about the way the inquiry was phrased—better tailored alternatives easily could have been used to get at the wholly legitimate matter of duty. But my concern now doesn't convert a voir dire examination 2 years ago into a gross or flagrant impropriety. For much the same reason, I don't see the prosecutor's statements as evincing ill-will. Again, the law is hardly clear. And the prosecutor skirted neither a district court order nor a ruling on an objection related to that line of questioning. Finally, the State presented a strong evidentiary case to the jury. Accordingly, Stinson cannot show prejudice adversely affecting his right to a fair trial. In this circumstance, the two criteria bearing on the character of the prosecutor's conduct would seem to be more important. But that also suggests a sanction aimed directly at the prosecutor might be more appropriate than upsetting a conviction.

That raises what seems to be another paradox of jury nullification when it comes to fashioning a remedy—a paradox for which I disclaim any particular insight. As I have said, a criminal defendant has no right to jury nullification. Theoretically, then, a prosecutor's comments, however flagrant or spiteful, dissuading jurors from nullification do not compromise any right inhering in a fair trial in the sense of a proceeding conforming to established substantive and procedural rules. Indeed, a jury rendering a

nullification verdict deliberately breaks those rules. Sometimes, the result can be viewed as serving a higher purpose grounded in principles of absolute justice. But not always. I am, thus, left to ponder how much allowance the judicial process ought to make to protect something that is itself antithetical to the process. In this case, I am comfortable concluding Stinson has failed to show some sort of reversible error.

Stinson next contends the purported instructional error and the prosecutor's voir dire considered together denied him a fair trial. Appellate courts may weigh the overall impact of multiple trial errors and should grant relief if cumulative effect deprives the defendant of a fair hearing even when each error individually might be considered harmless. *Smith-Parker*, 301 Kan. at 167-68. I see only one possible error, and my colleagues find none. So there is nothing to aggregate. Cumulative error, therefore, does not come into play. *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 (2010).

Finally, Stinson argues his Missouri conviction for possession of a controlled substance could not properly have been used as the basis for charging him with felony possession of marijuana in this case and sentencing him accordingly. He submits a jury had to determine if the Missouri conviction involved marijuana rather than some other controlled substance. Because neither the documents the State relied on in proving the Missouri conviction at Stinson's preliminary hearing nor any other documents pertaining to that conviction have been included in the record on appeal, we cannot determine whether that is correct. But Stinson, as the party claiming error, had an obligation to provide a sufficient record for appellate review. See *State v. Kidd*, 293 Kan. 591, 601, 265 P.3d 1165 (2011); *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008); *Harman v. State*, No. 108,478, 2013 WL 3792407, at *1 (Kan. App.) (unpublished opinion) ("When there are blanks in that record, appellate courts do not fill them in by making assumptions favoring the party claiming error in the district court."), *rev. denied* 298 Kan. 1202 (2013).

The issue was not raised in the district court. And the State says it is moot because Stinson has been released from probation. I put aside challenges as to whether the issue was preserved for appeal or remains legally viable. I outline briefly Stinson's argument and explain why we should not consider it on this record.

To be convicted of felony possession of marijuana under K.S.A. 2015 Supp. 21-5706, the defendant must have a previous conviction for possession of marijuana under Kansas law or "under a substantially similar offense from another jurisdiction." K.S.A. 2015 Supp. 21-5706(c)(2)(B). The crime is otherwise a misdemeanor. I accept as a general proposition that Stinson faced harsher punishment for the felony charge than he would have for the misdemeanor.

During Stinson's preliminary hearing, the State offered an exhibit described as "a certified conviction from a prior conviction for possession of marijuana from Dallas County, Missouri" that was admitted without objection. Relying on that document and the other evidence, the district court bound Stinson over for trial on the felony possession charge. At the conclusion of the preliminary hearing, the district court released that document and other exhibits to the State. The exhibit was not made part of the record then, and it is not part of the appellate record now.

The past conviction was not treated as an element of the charged offense at trial, so no documents related to it were offered or admitted then. The jurors were not informed of Stinson's Missouri conviction or any circumstances related to it. Stinson did not dispute the Missouri conviction at the sentencing hearing.

On appeal, Stinson says that *State v. Dickey*, 301 Kan. 1018, 1021, 350 P.3d 1054 (2015), and *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), mandate that a jury determine if his Missouri conviction was for possession of marijuana because the Missouri statute simply criminalizes the possession of controlled

10

substances generically. The *Dickey* and *Descamps* decisions protect a criminal defendant's right to jury trial set out in the Sixth Amendment to the United States Constitution. They apply the rule established in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), that a fact, other than a previous conviction, used to increase a criminal defendant's penalty beyond the statutory maximum must be proved to a jury beyond a reasonable doubt.

As explained in *Dickey*, a fact may be discerned from a past conviction if that fact forms an essential component or element of the crime, as set forth in the applicable statutes. *Dickey*, 301 Kan. at 1037. If the governing statutes establish multiple ways of committing a given crime, a court may review documents pertaining to the defendant's conviction, such as the complaint or judgment, to determine the particular statutory violation. 301 Kan. at 1037-38. The documents may not be used to prove the fact itself but merely to point out the applicable statutory violation underlying the crime of conviction. The fact must then be evident from the statutory elements for that way of violating the statute. That is, the court must look to the statutory definitions or elements of the crime of conviction to discern the fact rather than the evidentiary circumstances supporting the defendant's guilt. *Descamps*, 133 S. Ct. at 2283.

Before addressing Stinson's argument and the sufficiency of the appellate record, I mention a respectable rejoinder that would undercut the merits: The classification of the crime against Stinson as either a misdemeanor or a felony does not directly increase the punishment and, therefore, does not implicate *Apprendi*, *Descamps*, or *Dickey* at all. The classification arguably does so only indirectly and simply as a byproduct of the legislative determination to elevate the offense from a misdemeanor to a felony for repeat offenders. Given my narrower disposition of the issue, I need not and do not delve further into those implications.

11

The statute Stinson relies on states in pertinent part: "Except as authorized by sections 195.005 to 195.425, it is unlawful for any person to possess or have under his control a controlled substance." Mo. Rev. Stat. § 195.202. But among the statutes referenced and incorporated in Mo. Rev. Stat. § 195.202 is Mo. Rev. Stat. § 195.017 that sets out various schedules listing specific drugs and other substances that are controlled in Missouri. Possession of some of the listed substances is prohibited; the possession of others is restricted or otherwise regulated. One schedule in Mo. Rev. Stat. § 195.017 expressly identifies and lists marijuana. Accordingly, the elements of the Missouri crime of possessing a controlled substance are set out in Mo. Rev. Stat. § 195.017 and Mo. Rev. Stat. § 195.202. But Mo. Rev. Stat. § 195.202 alone fails to fully define the crime or its elements, since it does not establish what substances are controlled in Missouri. In turn, the schedules in Mo. Rev. Stat. § 195.017 do and, in doing so, identify multiple ways of violating the law.

Consistent with *Dickey* and *Descamps*, the district court in this case could review the certified judgment of conviction or other documents from Stinson's Missouri conviction to determine the way he violated that state's criminal prohibition on possessing controlled substances. If the certified judgment from Missouri proving Stinson's conviction cited both Mo. Rev. Stat. § 195.202 (the general statute criminalizing possession of controlled substances) and the particular scheduled listing for marijuana in Mo. Rev. Stat. § 195.017, it would sufficiently identify the factual basis of the crime to satisfy the requirements of *Dickey*, 301 Kan. at 1037. If the document did not, then the State in this case presumably would have had to establish in another way that the Missouri conviction was for marijuana rather than some other controlled substance—for example, either through different documents referencing the statutory listing for marijuana or by showing that fact had been proved to a jury.

The certified Missouri conviction is not in the record, and I cannot presume it to be insufficient. Stinson, therefore, has failed to demonstrate any error in that respect.

12

Having considered the issues Stinson has presented, I find no error materially affecting his rights and no basis for reversing his convictions or sentence.

* * *

BUSER J., concurring:  I concur with the judgment of our court. I write separately for two reasons. First, rather than presume the prosecutor's voir dire inquiries were error, I would find they were not erroneous. I am unaware of any precedent wherein similar voir dire inquiries were found by a Kansas appellate court to violate the concept of nullification. Moreover, both Stinson and the State proposed a jury instruction that advised the jurors they were to base their verdict entirely upon the evidence produced at trial and the law instructed by the district court. The prosecutor's voir dire questions were consonant with this agreed-upon instruction.

Second, I do not join in Judge Atcheson's ruminations about the concept of nullification because they are unnecessary to deciding the narrow issue on appeal. As our Supreme Court recently stated:  ""Dicta in a court opinion is not binding, even on the court itself, because the court should consider the issue in light of the briefs and arguments of counsel when the question is squarely presented for decision." [Citation omitted.]' *State v. Cummings*, 297 Kan. 716, 725-26, 305 P.3d 556 (2013)." *State v. Toliver*, 52 Kan. App. 2d 344, 355, 368 P.3d 1117 (2016), *petition for rev. filed* February 19, 2016.

* * *

SCHROEDER, J., concurring:  I concur in Judge Atcheson's decision finding the initial jury instruction was legally proper because we must follow our Supreme Court's decision in *State v. Tahah*, 302 Kan. 783, 794-95, 358 P.3d 819 (2015). I also concur

13

with that part of Judge Atcheson's decision finding Stinson failed to provide a sufficient record on appeal to challenge the use of his prior Missouri conviction to support his felony conviction for possession of marijuana. See K.S.A. 2015 Supp. 21-5706.

Finally, I join in Judge Buser's concurrence finding the prosecutor's voir dire was proper.